Filed 7/21/22  In re M.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | C094551 |
| THE PEOPLE, | (Super. Ct. No. JD2018331) |
| Plaintiff and Respondent, | |
| v. | |
| M.B., | |
| Defendant and Appellant. | |

In a prior unpublished opinion, *In re M.B.* (May 5, 2020, C089273) [nonpub. opn.], we upheld the juvenile court's judgment finding that defendant M.B. (the minor) committed voluntary manslaughter based on imperfect self-defense in the killing of R.A. (Pen. Code, § 192—a lesser included of count 1), actively participated in a criminal street gang (Pen. Code, § 186.22, subd. (a)—count 2), and committed assault by means likely to produce great bodily injury on L.B.  (Pen. Code, § 245, subd. (a)(4)—count 3).  We also

1

upheld the juvenile court's enhancement findings, including its finding that the minor, in the commission of counts 1 and 3, acted to benefit a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1).)

At the disposition hearing, the juvenile court declared the minor a Welfare and Institutions Code section 602 ward, found his maximum confinement time for all charges and enhancements was 21 years, and committed him to the Division of Juvenile Justice.

After a subsequent restitution hearing, the juvenile court ordered the minor to pay $20,992.77 in victim restitution to the California Victim Compensation Board. This order is the subject of the present appeal. As relevant to the minor's arguments, the award included $10,185.98 for L.B.'s lost income, $2,424.55 for T.B.'s lost income, and $999.99 for a security system. The minor contends we must reverse the juvenile court's order of restitution for L.B.'s and T.B.'s lost income and its finding that J. and G. should not be held jointly and severally liable for the security system. We will modify the order to exclude $2,424.55 for T.B.'s lost income. In all other respects, the restitution order is affirmed.

## I. BACKGROUND

On June 18, 2018, a car drove at high speed down a dead-end street where L.B. and T.B. were outside with their son.

The car made a wide right turn and then parked by a trailer. L.B. walked over to the car and asked the three people who were getting out of the car to slow down so that they would not hit the child playing in the street. The minor replied, "[N]o one is going to tell me how to drive." One of the people said, " 'Fuck you. We own this block.' " L.B. testified it was not his intent to start a fight or intimidate anyone. The minor's statement and his posture suggested to L.B. that there would be a fight.

The minor walked toward L.B. L.B. tried to create space between them by kicking his foot out. L.B. testified that they exchanged blows and at least three other people joined in: "I just remember getting hit like by a bunch of different hands. That's all I

2

remember." L.B. described it as feeling like a swarm of bees was coming after him. "I just know I was getting punched from everywhere on my body and my head, everywhere." R.A. was one of the people who joined the fight on L.B.'s behalf.

At some point during the fight, the minor went into the trailer. The fighting continued. L.B. testified that the men fighting him were yelling "Busters" and that he broke his hand fighting with "the tall guy."

The prosecution's expert on Norteño and Sureño criminal street gangs in Yolo County testified that "Busters" is a derogatory term used by Sureños toward Norteños. He also opined that the minor and at least one other individual who arrived in the car with him were active participants in East Side Trecé, a subset of the Sureños.

After the minor emerged from the trailer, one of his arms was extended, and he was pointing a gun. He fired three shots, killing R.A. L.B. testified that at the time the minor shot R.A., the fight was over.

## II. DISCUSSION

A. *Standard of Review*

Restitution in juvenile cases is governed by Welfare and Institutions Code section 730.6, which requires the juvenile court to order restitution of "a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in [Welfare and Institutions Code s]ection 602." (Welf. & Inst. Code, § 730.6, subd. (h)(1).)

"As a general matter, we review restitution orders for an abuse of discretion. [Citation.] However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently. [Citation.] And where the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098.)

3

*B.*     *L.B.'s Lost Income*

      *1.*     *Juvenile Court Proceedings*

To support $10,185.98 in restitution for lost income to L.B., the People submitted a certified record from the California Victim Compensation Board.  The juvenile court explained the Board's records "constitute sufficient *prima facie* evidence of the loss and the nexus to the offense under [*I*]*n re S.E.* [(2020) 46 Cal.App.5th 795], thus shifting the burden to the defense.  M.B. has raised questions, but has not submitted evidence or analysis refuting this *prima facie* case.  Therefore, restitution is awarded in the amount of **$10,185.98** for L.B.'s lost income."

      *2.*     *Causation*

On appeal, the minor contends this portion of the award should be vacated because he was not the proximate cause of LB.'s injury, and he met his burden of refutation on the issue.  Anticipating the possibility we find this claim forfeited for his failure to raise it with the juvenile court, the minor alternatively asserts his counsel was ineffective for not raising the argument in the juvenile court.  Rather than decide the forfeiture issue, we reach the merits, because they are dispositive of both alternative contentions.

Welfare and Institutions Code section 730.6 authorizes restitution "for all determined economic losses incurred as the result of the minor's conduct."  (Welf. & Inst. Code, § 730.6, subd. (h)(1); see also *id*., subd. (a)(1).)  An economic loss occurs "as the result of the minor's conduct" when the minor's conduct is a "substantial factor" in causing the victim's loss.  (*In re A.M.* (2009) 173 Cal.App.4th 668, 673-674.)  " 'A substantial factor is more than a trivial or remote factor.  However, it does not have to be the only factor that causes the injury.' "  (*Id*. at p. 673.)

The minor argues his speeding "only played an infinitesimal part in L.B.'s hand injury," and L.B. was the instigator and cause of the melee.  We look to "the relationship between the victim's loss and the defendant's crime."  (*People v. Martinez* (2017) 2

Cal.5th 1093, 1098.)  The minor's crime was not speeding,[1] but included assault by means likely to produce great bodily injury and active participation in a criminal street gang.  The People argue the minor was responsible for the brawl that continued through L.B.'s foreseeable hand injury, even if the minor did not land the first blow.  Substantial evidence supports the People's argument.  "In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.'  [Citations.]  Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]  'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding.  [Citation.]  We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact."  (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)  The minor points to medical records indicating that, from June 25, 2018, to August 6, 2018, with respect to repetitive hand motions, L.B. might be only half as fast with his right upper extremity.  The minor ignores that the same records also state L.B. could not reach above the shoulders at all with the right upper extremity.  Thus, while L.B. testified that he broke his hand fighting with "the tall guy," his medical records support the inference he also had other injuries from the fight that prevented him from reaching above the shoulder.  Further, there is sufficient evidence from L.B.'s testimony to support the conclusion that the minor started the brawl that caused L.B.'s injuries.  And while the minor argues he was inside the trailer when L.B. broke his hand, the record is not clear on this point.  Even if the minor

---

[1] One of the occupants testified the minor was not the driver.

was inside the trailer, the evidence suggests he was still participating in the ongoing fight at that time in that he was obtaining a gun to further escalate the violence he had started.

We reject the minor's assertion of insufficiency of the evidence and his derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless argument does not demonstrate ineffective assistance of counsel].)

C.    *T.B.'s Lost Income*

The minor argues, and the People concede, that the trial court erred in awarding T.B. restitution for lost income because her inability to work was a result of her witnessing the murder of her friend, and not the assault of her husband. We accept the People's concession. T.B.'s friendship with R.A. did not qualify her as a victim of the murder for purposes of obtaining restitution. (Welf. & Inst. Code, § 730.6, subd. (j).) We will modify the restitution order to strike $2,424.55 for T.B.'s lost income

D.    *Security System*

Welfare and Institutions Code section 730.6, subdivision (h)(2) provides that, "If feasible, the court shall also identify on the court order, any co-offenders who are jointly and severally liable for victim restitution." The restitution included $999.99 for a security system for L.B. and T.B. The minor argues the juvenile court erred in denying his request to make J. and G. jointly and severally liable for this amount. We disagree. L.B. told law enforcement that J. threw a bottle during the altercation. Otherwise, while there is evidence J. and G. were at the scene, there is no indication what role they played. The court explained, "there does need to be a nexus of some sort between the offense and the loss. Certainly being a part of a melee is going to be disconcerting. Being a witness to a murder is something of an entirely different order. So while I can't say that there is absolutely no connection between the loss and the actions of J[.] and G[.], I don't think there is enough evidence before me to find the required nexus. So I will not be ordering

restitution as to them." We find no abuse of discretion. Thus, we will affirm the court's refusal to impose restitution jointly and severally.

### III. DISPOSITION

The restitution order is modified to strike $2,424.55 for T.B.'s lost income. In all other respects, the restitution order is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

MAURO, Acting P. J.

/S/

_____

HOCH, J.